UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGELA M. C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:25-cv-06171-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating medical opinion evidence. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. §

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff filed her applications for SSI and DIB on July 28, 2020, alleging disability as of January 12, 2017. Administrative Record ("AR") 106–08. Her claims were denied initially on December 28, 2020, and upon reconsideration on September 8, 2021. AR 106–07, 146–47. The matter came on for hearing before ALJ Malcom Ross on May 5, 2022, who issued a decision concluding that Plaintiff was not disabled on June 29, 2022. AR 32. On July 21, 2023, the Appeals Council denied Plaintiff's request for review, making ALJ Ross's June 29, 2022, decision, the Commissioner's final decision subject to judicial review. AR 1.

On September 29, 2023, Plaintiff filed a complaint in the United States District Court for the Western District of Washington, seeking judicial review of the June 29, 2022, decision. AR 1149. By order entered April 1, 2024, United States Magistrate Judge Brian A. Tsuchida reversed and remanded the matter for further proceedings. AR 1151–59. On September 25, 2024, the Appeals Council remanded the matter for a new hearing. AR 1162.

The matter came on for a second hearing on August 5, 2025, before ALJ David Johnson ("the ALJ"), who issued a decision on August 29, 2025, once again, concluding that Plaintiff was not disabled. AR 1052. Plaintiff filed another complaint in the Western District of Washington on January 5, 2026, seeking judicial review of the ALJ's decision. Dkt. 6.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

## III. Discussion

Plaintiff argues that the ALJ erred in considering: (1) the medical opinion evidence; (2) her subjective symptom testimony; (3) the lay witness evidence; and (4) her RFC. Dkt 17 at 2.

### A. Medical Opinion Evidence

First, Plaintiff argues that the ALJ erred in evaluating certain medical opinion evidence. Dkt. 17 at 3–17.

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The

---

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

*i. Dr. Wheeler*

Dr. Wheeler conducted a Psychological/Psychiatric Evaluation of Plaintiff on June 25, 2020. AR 717. In Dr. Wheeler's opinion, Plaintiff has "marked" limitations in her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; complete a normal work day and work week without interruptions from psychologically based symptoms; set realistic goals and plan independently. AR 719. In turn, Dr. Wheeler opined that Plaintiff's overall severity rating was "marked." *Id.*

The ALJ found Dr. Wheeler's opinion was not persuasive. AR 1044. As for supportability, the ALJ found "Dr. Wheeler opined concentration was not within normal limits, [but] she provided no support for that assertion[,]" and although Dr. Wheeler "noted [Plaintiff] was literal, with thin insight[,] [t]hese [observations] do not support the marked degree of limitation asserted." *Id.* Plaintiff argues that "Dr. Wheeler's narrative discussion of [Plaintiff]'s traumatic history provides ample support for her opinion regarding [Plaintiff]'s limitations." Dkt. 17 at 4. The Court agrees that Dr. Wheeler's narrative discussion of Plaintiff's history of PTSD, depression, and anxiety provides support for Dr. Wheeler's opinion. *See* AR 717–18.

As for consistency, the ALJ found that the opinion was inconsistent with other examiners as well as the treatment record, which showed:

> the ability of [Plaintiff] to interact appropriately with providers, who often described her as cooperative and friendly with good eye contact; treatment[ ] notes describing a normal mood and affect with stable mental symptoms; treatment notes suggesting that [Plaintiff] is able to engage in at least limited social activities; her intact or otherwise unremarkable hygiene and grooming; her inconsistent statements; and her generally intact cognition on routine mental status examinations with normal attention and concentration; normal neurological findings, indicative of intact memory, and full alertness and orientation; normal thought content with a normal thought process; and estimated average intelligence that do not corroborate the severity or frequency of her reported symptoms and limitations and suggest that she retains greater mental functioning than alleged and opined by Dr. Wheeler.

AR 1045 (internal record citations omitted).

Plaintiff argues that "none of the treatment notes cited by the ALJ are actually inconsistent with Dr. Wheeler's opinion, and the ALJ here fails to acknowledge or discuss any of the numerous findings and opinions [that] are consistent with Dr. Wheeler's opinion." Dkt. 17 at 4. Indeed, despite contending that the record was inconsistent with Dr. Wheeler's opinion of marked limitations, the ALJ's citations for this proposition do not provide substantial evidence of an inconsistency.

For instance, the ALJ referenced Exhibit B4E—a Function Report that Plaintiff submitted—wherein she reported "[n]o energy, can't breathe, cannot work with others because of my PTSD and social anxiety. Don't like to leave home because of depression." AR 332. Likewise, Exhibit B8E, another Function Report, notes that Plaintiff "care[s] for her autistic daughter" and "cook[s], clean[s] house, [does] laundry, dishes, transport child to/from school," but also indicates that Plaintiff "only go[es] out when [Plaintiff or her daughter] have appts, or need groceries." AR 363–64, 366.

Exhibit B24E is also a Function Report the ALJ cited. AR 1314. That report indicates, again, that Plaintiff cares for her daughter, AR 1316–18, and "is able to do basic house chores[,]" but that she does not go out because she "do[esn]'t feel comfortable being around people – trust issues[,]" which again, is consistent with Dr. Wheeler's opinion. *Cf.* AR 1319, 719. Finally, Exhibit B31E, *yet another* Function Report the ALJ referenced, indicates that Plaintiff, again, cares for her daughter, but "stay[s] in [her] house more than normal, tr[ies] to go [shopping] early so there [are] less people out." AR 1353–58. These citations do not provide substantial evidence of an inconsistency with Dr. Wheeler's opinion of marked limitations.

Next, the ALJ offers a long string citation from Exhibit B3F, which consists of Plaintiff's medical records with "Behavior Health Resources" from March 2018 until March 2020, to support his finding of an inconsistency with Dr. Wheeler's opinion. AR 579–716, 1045.[3]

---

[3] In making this finding, however, the ALJ does not address evidence from Exhibit B3F that Plaintiff "has a diagnosis of [PTSD and] stat[es] 'I stay home. I don't go anywhere. I don't even go outside unless I absolutely have to. It causes me to be a procrastinator more and avoid other things and that causes more anxiety, more stress.' [Plaintiff] presents as anxious with fleeting eye contact[,] [and] [s]he seems to have difficulty with remaining still and concentration." AR 602. These records also note that Plaintiff "needs to work on 'my anxiety, I bottle everything up.' [Plaintiff] presents as anxious and fidgeting and has difficulty with remaining focused and needs to be redirected. She reports that she continues to experience 'angry outbursts, nightmares' and that she isolates." AR 593. The Court observes that in this time period, Plaintiff missed several appointments, which is also consistent with Dr. Wheeler's opinion that Plaintiff would have marked difficulty "maintain[ing] regular attendance." *Cf.* AR 719, 642, 648, 661, 672.

B3F/27, however, indicates that Plaintiff "presented as cooperative and friendly" but "her mood appeared to be *anxious*[.]" AR 605 (emphasis added). B3F/38 similarly notes that Plaintiff "presented as cooperative" but her mood "appeared to be slightly depressed and [Plaintiff] reported [her mood] to be 'a little depressed.'" AR 616.

So too, with Exhibit 3F/40, where Plaintiff "appeared to be slightly depressed and her affect was congruent [with slight depression]." AR 618. Subsequent appointments, again, cited by the ALJ, indicate Plaintiff "presented as friendly and cooperative" but that her "mood appeared to be slightly anxious and her affect was congruent." AR 605, 616, 618, 620, 624, 626, 634, 636, 638, 640, 644, 646, 652, 656, 658, 665, 671, 676, 680, 692. This evidence is not inconsistent with Dr. Wheeler's opinion of marked limitations.[4] *Cf. id.*, AR 719; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding that an ALJ errs when they "cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment.").

The ALJ's remaining citations fare little better. For instance, Exhibit B4F, is Dr. Wheeler's *own opinion*. AR 717. The ALJ does not explain how Dr. Wheeler's opinion is inconsistent with itself. Exhibit B23F is a medical opinion where the provider opined limitations that Plaintiff was "unable to meet competitive standards" in, *inter alia*, "maintain[ing] regular attendance and be[ing] punctual within customary, usually strict tolerances[,]" which *is*

[4] The ALJ also asserts Exhibit 16F/14, 89, B21 F/11, 45, and B28F/6, support a finding of an inconsistency, but this evidence documents the same "[s]ocial anxiety[,]" "anxious, congruent, worried[,]" or "angry, anxious, depressed, irritable, worried" mood observed in Exhibit B3F. AR 1564, 1639, 1738, 1772, 1902. B11F/50, 52, and 54, likewise, document Plaintiff's mood as "agitated, depressed, guarded, worried[,]" that Plaintiff "was restless during session and rarely sat still[,]" and that her "anxiety was acting up bad" due to meeting with a new counselor—again, consistent with Dr. Wheeler's opinion of Plaintiff's marked limitations in certain domains of mental functioning due to PTSD, depression, and anxiety. AR 919–20, 922, 924. In fact, Exhibit B11F/54 *actually* notes Plaintiff "was visibly anxious: fidgeting, only making sporadic eye contact, sitting with arms and ankles crossed." AR 924.

consistent with Dr. Wheeler's opinion of marked limitations in this category of functioning. *Cf.* AR 1843, 719.[5]

Exhibit B24F stated that Plaintiff "did not appear to understand instructions at times[,]" noted that "her mood [w]as anxious and stressed[,]" and opined that "[a] work setting may have a moderate negative impact on the condition of [Plaintiff]. [She] can not be around people, [her] stress level increased, and if [she's] isolated [she] fight[s] back because [her] mood fluctuates[.]" AR 1850–51. It is unclear to the Court how this citation provides substantial evidence of an inconsistency with Dr. Wheeler's opinion of marked limitations in the aforementioned areas.

Exhibit B9F, is a "Psychiatric Disability Evaluation" wherein Plaintiff asserted a "loss of interest or pleasure in doing things on most days during the past two weeks, unintentional weight loss, fatigue, loss of energy, decreased concentration" as well as "feeling nervous, anxious[,] or on edge more often than not over the last 6 months, difficulty controlling worry, edginess, irritability, impaired concentration . . . *adverse effects socially*[.]" AR 853 (emphasis added). The Court, once again, cannot discern how this evidence is inconsistent with Dr. Wheeler's medical opinion, nor why the ALJ cited this evidence for this proposition.

Finally, the medical records from Exhibits B15F/14 and B31F/42 note that Plaintiff was "alert, no acute distress, well hydrated, well developed and well nourished" and "alert and cooperative; normal mood and affect; normal attention span and concentration[.]" AR 1509, 2064. Those records, however, were from appointments for conditions *other than* Plaintiff's mental health; specifically (and respectively), for a consultation for a hysterectomy due to

[5] Exhibits B13F and B29F are also Psychological/Psychiatric Evaluations wherein a doctor opined similar "marked" limitations in Plaintiff's mental functioning as Dr. Wheeler. AR 1022, 2013. These medical opinions are not inconsistent with Dr. Wheeler's medical opinion. *Cf* AR 1022, 2013, 719. Exhibit B14F *also* contains a medical opinion that Plaintiff has anxiety and PTSD and that she was "unable to participate" in a workweek, AR 1467, which is *also* consistent with Dr. Wheeler's opinion of marked limitations.

"complain[t]s of pelvic pain[,]" and "[e]ustachian tube dysfunction." AR 1507–09, 2064; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (holding that "no reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing, [just as] it is unreasonable to expect [the claimant's] examining physicians [to] under[take] a thorough range of motion of [the claimant's] right thumb.).

Here too, the ALJ did not explain the reason for discounting all of the aforementioned evidence of PTSD, depression, and anxiety—and their limiting effects on Plaintiff—based upon observations of Plaintiff's "normal mood and affect" and "no acute distress" at medical appointments where Plaintiff was not seen for mental health conditions. *See* AR 1507–09, 2064; *see also Swanson v. Bisignano*, No. 24-4926, 2025 WL 2779300, at *2 (9th Cir. Sep. 30, 2025) (holding that the ALJ erred in rejecting a medical opinion because the ALJ "did not explain how general observations [such as 'consistently alert and oriented' and 'normal mood and affect'] from physicians who were not evaluating [the plaintiff]'s mental health contradict [the medical] opinion."). It is axiomatic in this jurisdiction that we require an ALJ to build an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)). Here, the ALJ has failed to do so.

Because the ALJ has failed to offer substantial evidence of an inconsistency between Dr. Wheeler's opinion and the medical evidence of record, the Court concludes that the ALJ erred in evaluating Dr. Wheeler's medical opinion evidence.

//

//

*ii. Harmless Error*

Applying the harmless error analysis, the Court concludes that the ALJ committed harmful error in evaluating the medical opinion evidence because, had the ALJ properly considered this evidence, the RFC may have included additional limitations, or the ultimate determination of disability may have changed. Indeed, in Defendant's words, Dr. Wheeler opined limitations "which would generally preclude all employment from a psychological perspective and likely would, if adopted, lead to a finding that Plaintiff meets a mental listing." Dkt. 18 at 9. The ALJ's error, therefore, is not harmless, and the proper disposition is to reverse and remand the matter for additional proceedings. *See Stout*, 454 F.3d at 1055; *see also Molina*, 674 F.3d at 1115.

B. Remaining Issues

In light of this disposition, the Court need not address Plaintiff's remaining arguments regarding the medical opinion evidence, her subjective symptom testimony, the lay witness evidence, or her RFC, because, on remand, the ALJ is instructed to reconsider the entire Social Security sequential process, including the medical opinion evidence, Plaintiff's subjective symptom testimony, the lay witness evidence, and if necessary, Plaintiff's RFC. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

//

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 18th day of August, 2026.

David W. Christel
United States Magistrate Judge